IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02016-CNS-KAS

LOUIS PEOPLES, JR.,

    Plaintiff,

v.

COLORADO DEPT. OF CORRECTIONS,
MOSES STENCIL,
JEFF LONG,
JANET SMITH,
SEAN MITCHELL,
ANTHONY RUSSELL, and
CAROL THOMAS,

    Defendants.
_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on Defendants Colorado Department of Corrections ("CDOC"), Moses Stencil, Janet Smith, Anthony Russell, Jeff Long, Sean Mitchell, and Carol Thomas's Partial **Motion to Dismiss Plaintiff's Complaint (ECF No. 1) Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure** [#26][1]. Plaintiff filed a Response [#30], to which Defendants filed a Reply [#40].

    The Motion to Dismiss has been referred to the undersigned. *See Order Referring Motion* [#27]. The Court has reviewed the briefing, the entire case file, and the applicable law.

---

[1] "[#26]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

1

For the following reasons, the Court **RECOMMENDS** that the Motion to Dismiss [#26] be **GRANTED in part** and **DENIED in part**.

## I. Background[2]

### A. Factual Allegations

Plaintiff, a pro se litigant[3], is an inmate currently held in the custody of the CDOC and confined in the Sterling Correctional Facility ("SCF"). *Compl.* [#1] at 2. Plaintiff names as Defendants the CDOC and multiple SCF officials, including SCF Warden Jeff Long, ADA (Americans with Disabilities Act) Coordinator Janet Smith, SCF Housing Coordinator Lt. Sean Mitchell, Inmate Coordinator Anthony Russell, and SCF Cell House Captain Carol Thomas. *Id.* at 1, 3-5. He names each individual Defendant in their individual and official capacities. *Id.*

Plaintiff suffers from a "degenerative eye condition with low vision acuity (less than 0/200)" and "vision-glaucoma (complete blindness in the left-eye and partially blind in the right-eye[.])" *Id.* at 11.[4] Plaintiff alleges that Defendants refuse to provide him with vision-related reasonable accommodations that would make certain technology accessible, including a laptop equipped with an accessible e-book reader program, screen

---

[2] For the purposes of resolving the Motion [#26], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Complaint [#1]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[4] Plaintiff also suffers from other physical conditions, *see id.*, but they are not related to the claims asserted herein.

2

magnification, screen reader software, dragon reader software, a typing tutorial program, and OCR scanning software and hardware, a pen reader, a printer and scanner with assistive technology and compatible with the laptop, and braille literacy. *Id.* at 13-14, 15, 16-17, 18, 19-21, 27, 31, 33-34. Plaintiff describes the reasonable accommodations as "electronic devices necessary for a sight challenged individual to be able to exist [at] a minimum level compared to sighted inmates currently incarcerated within the CDOC." *Id.* at 13. He also contends that because he is a visually impaired inmate, the CDOC should provide him with a single cell or single occupancy double cell. *Id.* at 22, 27, 29-30. Additionally, although he primarily references Defendants' actions collectively, Plaintiff specifically alleges that in August 2023, Defendant Thomas retaliated against him for repeatedly requesting electricity be restored to his cell during a facility-wide outage by forcing him to accept a cellmate in his double occupancy cell that he had been inhabiting alone. *Id.* at 23-24.

By this action, Plaintiff asserts claims under Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983 alleging constitutional violations under the First, Eighth, and Fourteenth Amendments. Though Plaintiff bases each of these claims on a settlement agreement previously reached between parties in a separate federal lawsuit, discussed in more detail below, he also asserts independent claims under each statute. *Id.* at 12, 18, 19, 26, 29, 31, 32. He seeks declaratory judgment, prospective injunctive relief in the form of a court order directing Defendants to provide him the "full accommodations (necessary for each of his disabilities)," nominal, compensatory, and punitive damages, and "for all rights to be restored and that officials stop racial profiling." *Id.* at 8-9, 33-35.

3

**B.     Settlement Agreement**

In 2021, two CDOC inmates and the National Federation of the Blind of Colorado (NFB) brought a lawsuit against the CDOC and its Executive Director for alleged violations of Title II of the ADA and § 504 of the Rehabilitation Act based on the plaintiffs' disability of blindness. *See* United States District Court for the District of Colorado, *Mackes v. CDOC*, No. 21-cv-01100-CNS-CYC. The parties ultimately reached a settlement agreement. *NFB Settlement Agreement* [#26-1]. The Agreement defines a Blind Prisoner as an individual in the custody of the CDOC whose corrected visual acuity is 20/200 or worse in the better eye or someone who cannot read standard print without magnification beyond that provided by regular glasses. *Id.* at ¶¶ 2(h), (r). The CDOC agreed to alter its policies and procedures related to Blind Prisoners by providing assistive technology, including but not limited to laptops equipped with screen reader software, compatible printers and scanners with assistive technology, and additional assistive devices that allow them access to programs, activities, and materials, such as portable scanners and digital recorders. *Id.* at ¶¶ 4(a), (b), 5(b).

**C.     The Motion to Dismiss**

The CDOC and the individual Defendants, in their individual and official capacities, seek to dismiss the majority of Plaintiff's claims. *Motion* [#26]. In their Motion, Defendants raise the following arguments:

1. Based on Eleventh Amendment immunity, the Court does not have subject matter jurisdiction over Plaintiff's constitutional claims seeking monetary damages and retrospective declaratory relief, *id.* at 7-8;

2. Plaintiff does not have standing to bring 42 U.S.C. § 1983 claims that are based upon Defendants' alleged noncompliance with the NFB Settlement Agreement, *id.* at 8-12,

3. Plaintiff failed to state a plausible Eighth Amendment equal protection claim and Fourteenth Amendment deliberate indifference claim brought pursuant to § 1983, *id.* at 12-15, and

4. Defendants are entitled to qualified immunity against Plaintiff's constitutional claims, *id.* at 20-21.[5]

Defendants acknowledge that they are not seeking dismissal of Plaintiff's First Amendment retaliation claim against Defendant Thomas. *Id.* at 5 n.4. Notably, though they characterize this claim as the only one for which they do not seek dismissal, *id.*, Defendants' Motion to Dismiss does not address Plaintiff's independent claims under Title II of the ADA or § 504 of the Rehabilitation Act.[6]

## II. Standards of Review

### A. Rule 12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

---

[5] Defendants also purport to seek dismissal of Plaintiff's First Amendment retaliation claims against Defendants Stancil, Long, Russell, Smith, and Mitchell and claims under Title VII of the Civil Rights Act. *Id.* at 16-20. However, Plaintiff did not assert First Amendment retaliation claims against these Defendants in his Complaint, including on the pages of the Complaint that Defendants reference in requesting dismissal. *Id.* at 26 (citing *Compl.* [#1] at 25, 26, 29). Similarly, Plaintiff did not assert a claim under Title VII of the Civil Rights Act. Instead, on the page Defendants reference in requesting dismissal of this claim, Plaintiff cites to Title II of the Civil Rights Act. *Id.* at 19 (citing [#1] at 30).

[6] In their Reply, Defendants acknowledge that Plaintiff asserted an ADA claim independent of the NFB Settlement Agreement. [#40] at 10-11.

5

A Rule 12(b)(1) challenge may take two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (citation omitted). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III. Analysis

**A.     Eleventh Amendment immunity**

Defendants CDOC and the individual Defendants in their official capacities request dismissal of Plaintiff's constitutional claims seeking monetary damages. *Motion* [#26] at 7-8. The Eleventh Amendment implicates a state's sovereign immunity, *Callahan v. Poppell*, 471 F.3d 1155, 1158-59 (10th Cir. 2006), and "generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Elephant Butte Irrigation Dist. of N.M. v. Dep't of Interior*, 160 F.3d 602, 607 (10th Cir. 1998). Likewise, the Eleventh Amendment "bars suits brought by individuals against state officials acting in their official capacities." *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001).

There are three exceptions to Eleventh Amendment immunity: (1) a State may consent to suit in federal court; (2) Congress may abrogate the states' Eleventh Amendment immunity; and (3) the doctrine of *Ex parte Young*, which allows suit for

prospective injunctive relief against individual state officers in their official capacities for an ongoing violation of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012); *see also Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception is narrow; it "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).

The first two Eleventh Amendment exceptions are inapplicable. The record contains no indication that the State has consented to suit in federal court, and 42 U.S.C. § 1983 does not constitute a congressional abrogation of state sovereign immunity. *See Davis v. California*, 734 F. App'x 560, 564 (10th Cir. 2018) ("Section 1983 . . . does not abrogate the states' sovereign immunity and neither the states nor their agencies qualify as 'persons' under § 1983.") (citations omitted). The third exception, *Ex parte Young*, only applies to prospective injunctive relief, not monetary damages or retrospective declaratory relief. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145-46 (1993); *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019).

Thus, to the extent Plaintiff names Defendant CDOC and seeks monetary damages and retrospective declaratory relief from the individual Defendants in their official capacities, those constitutional claims are barred by the Eleventh Amendment. *See, e.g., Amin v. Voigtsberger*, 560 F. App'x 780, 782-83 (10th Cir. 2014). Accordingly, the Court **recommends** the Defendants' Motion to Dismiss [#26] be **granted** and Plaintiff's claims against Defendant CDOC for money damages and those seeking retrospective declaratory relief and/or monetary damages from the individual Defendants in their official capacities be **dismissed without prejudice**. *See Rural Water Sewer &*

*Solid Waste Mgmt. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) (stating that "a dismissal on sovereign immunity grounds . . . must be without prejudice").[7]

## B.   42 U.S.C. § 1983 Claim arising from the NFB Settlement Agreement

One of the bases for Plaintiff's § 1983 claims is Defendants' alleged noncompliance with the NFB Settlement Agreement. *Compl.* [#1] at 10, 12-14, 16, 18, 26, 28, 32, 34. Defendants argue that Plaintiff does not have standing to seek enforcement of the NFB Settlement Agreement through a separate § 1983 action. *Motion* [#26] at 9. The Court agrees.

In *Klein v. Zavaras*, 80 F.3d 432, 435 (10th Cir. 1996), the Tenth Circuit held that "a § 1983 action is not an appropriate means to seek enforcement of a consent decree."[8] Neither the Supreme Court nor "lower courts, have [ ]ever expressed any doubt that § 1983 provides a cause of action only for deprivations of constitutional or statutory rights." *Green v. McKaskle*, 788 F.2d 1116, 1123 (5th Cir. 1986). The Tenth Circuit has reasoned that because "[r]emedial decrees do not create or enlarge federal constitutional rights," they are not "sufficient to serve as a basis for liability under § 1983." *Klein*, 80 F.3d at 435 (quoting *Green*, 788 F.2d at 1123). Additionally, "[a]llowing enforcement of consent

---

[7] In their Reply, Defendants request Eleventh Amendment immunity against Plaintiff's ADA claim. [#40] at 10-11. The Court will not consider arguments raised for the first time in a reply. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived."). Moreover, presuming the Court were to consider it, given the limited nature of Defendants' argument, their request for immunity would likely be denied. [#40] at 10-11 (addressing only the second step of a three-step framework under *United States v. Georgia*, 546 U.S. 151, 154, 159 (2006) to determine whether the ADA's abrogation of sovereign immunity in Title II applies to a plaintiff's claim).

[8]  The Tenth Circuit does not distinguish between consent decrees and settlement agreements "[f]or purposes of determining the[ir] effect." *Floyd v. Ortiz*, 300 F.3d 1223, 1225 n.1 (10th Cir. 2002).

9

decrees under § 1983 would discourage prison officials from agreeing to such benefits." *Id.* (internal quotation marks omitted). Because a settlement agreement cannot be enforced through a § 1983 action, the Court **recommends** the Defendants' Motion to Dismiss [#26] be **granted** and Plaintiff's § 1983 claims based on Defendants' alleged noncompliance with the NFB Settlement Agreement be **dismissed without prejudice**. *See Rural Water Sewer & Solid Waste Mgmt.*, 654 F.3d at 1069 n.9 (stating that "a dismissal . . . for lack of standing must be without prejudice").

C.   **Independent constitutional claims**

   1.   **Qualified Immunity**

Defendants argue that, to the extent Plaintiff seeks to hold them individually liable for constitutional claims, they are entitled to qualified immunity. *Motion* [#26] at 20-21. A qualified immunity defense "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To determine whether qualified immunity applies, a court considers (1) whether "the officers' alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (internal quotation marks omitted).

10

However, purely perfunctory argument that a party is entitled to qualified immunity is insufficient to deem the argument adequately raised on a motion to dismiss. *See, e.g., Herren v. Lappegaard*, No. 18-cv-00209-CMA-KLM, 2018 WL 3999658, at *5 (D. Colo. July 30, 2018) ("Defendants . . . do not raise the issue of whether Plaintiff has met the second element of the qualified immunity analysis, i.e., that the right was clearly established at the time when the events underlying this incident occurred. Accordingly, the Court does not consider it and finds that Defendants are not entitled to qualified immunity on this claim.") (internal citation omitted), *report and recommendation adopted*, 2018 WL 3996601 (D. Colo. Aug. 20, 2018); *Fisher v. Glanz*, No. 14-CV-678-TCK-PJC, 2016 WL 1175239, at *11 n.11 (N.D. Okla. Mar. 24, 2016) (stating that the defendant's "lawyers are well-versed in this area of law, and the Court finds no need to sua sponte research and analyze aspects of the qualified immunity analysis they did not brief"); *Sarno v. Reilly*, No. 12-cv-00280-REB-KLM, 2013 WL 1151818, at *10 (D. Colo. Jan. 17, 2013) (finding that the defendant was not entitled to qualified immunity after failing to argue that plaintiff could not meet the second element of the qualified immunity analysis), *report and recommendation adopted*, 2013 WL 1151817 (D. Colo. Mar. 20, 2013).

Here, although Defendants provide the general law regarding the "clearly established" prong of qualified immunity, they provide no argument or direct assertion pertaining thereto. Rather, the substance of their qualified immunity argument consists of one sentence, "Here, because [Plaintiff] fails to state plausible constitutional claims against Defendants, qualified immunity bars these claims." *Motion* [#26] at 20-21. The Tenth Circuit has rejected these singular statements as inadequate to support a request for qualified immunity. *See Berryman v. Niceta*, 143 F.4th 1134, 1141-42 (10th Cir. 2025)

11

(affirming lower court's denial of qualified immunity where the defendant presented "nothing more [in her motion to dismiss], than . . . passing references to her separate arguments that the [plaintiff's] complaint failed to state a claim for relief" and her "only statement regarding the second prong was that '[n]o clearly established law clearly shows this pattern of facts as supporting personal liability'" (citation omitted)). Thus, the Court **recommends** Defendants' Motion to Dismiss [#26] be **denied** as to their request for qualified immunity against Plaintiff's § 1983 claims.

2.  **Fourteenth Amendment Equal Protection Claim**

    a.  **Disability**

Plaintiff contends that Defendants violated his right to equal protection under the Fourteenth Amendment by refusing to provide reasonable accommodations related to his disability. *Compl.* [#1] at 1, 18-19, 26, 30, 32. "The Equal Protection Clause of the Fourteenth Amendment forbids states from 'deny[ing] to any person within [their] jurisdiction the equal protection of the laws.'" *Lewis v. Clark*, 577 F. App'x 786, 794 (10th Cir. 2014) (quoting U.S. CONST. amend. XIV, § 1). "This 'is essentially a direction that all persons similarly situated should be treated alike.'" *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Thus, an equal protection violation occurs when the government treats someone differently than another who is similarly situated. *Id.*

In *City of Cleburne*, the Supreme Court held that disabled individuals are not a suspect or quasi-suspect class. *Id.* at 446; *accord*, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365-67 (2001); *Welsh v. City of Tulsa*, 977 F.2d 1415, 1420 (10th Cir. 1992). This means that the Equal Protection Clause requires only that a State have a rational justification for making "distinctions between the disabled and nondisabled."

12


*Thompson v. Colorado*, 278 F.3d 1020, 1030 (10th Cir. 2001), *abrogated on other grounds by United States v. Georgia*, 546 U.S. 151, 159 (2006).

In their Motion, Defendants argue that Plaintiff has not "provide[d] the necessary factual specificity to identify similarly situated individuals, as he does not allege any facts regarding their characteristics or his disparate treatment in comparison." *Motion* [#26] at 13. Plaintiff has specifically alleged Defendants treat sighted, or nondisabled, inmates differently than those with vision impairment because technological devices such as laptops, scanners, and printers are only accessible by the former. *Compl*. [#1] at 13, 14, 18-20. In his Response, Plaintiff further describes his equal protection claim as arising from being "forced to suffer denial of accommodations that are provided others." *Response* [#30] at 11. The Court finds Plaintiff has, at this stage of litigation, sufficiently identified similarly situated individuals for purposes of his equal protection claim.

Significant to Plaintiff's claims, however, courts have also drawn distinctions between the Equal Protection Clause and the ADA. "Title II [of the ADA] requires public entities to recognize the unique position of the disabled and to make favorable accommodations on their behalf. Thus, while the basic premise of the Equal Protection Clause is that similarly situated citizens should be treated alike, the mandate of the ADA is that those who are not similarly situated should be treated differently." *Thompson*, 278 F.3d at 1031. "[T]he Equal Protection Clause does not generally require accommodations on behalf of the disabled by the states." *Id.* "If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause." *Garrett*, 531 U.S. at 368. To the extent Plaintiff's Fourteenth

Amendment claims seek reasonable accommodations, his reliance on the Equal Protection Clause is misguided.

On the other hand, construing Plaintiff's Complaint liberally, he also asserts that Defendants' actions are the result of a general discriminatory intent toward disabled inmates. The Equal Protection Clause's prohibition against invidious discrimination against the disabled and irrational distinctions between the disabled and the nondisabled remain. *Thompson*, 278 F.3d at 1031. To this, the Court agrees with Defendants that Plaintiff's claims of discrimination are too conclusory to sustain his claim. "[P]roof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Gray v. Sorrels*, 744 F. App'x 563, 573 (10th Cir. 2018) (citation omitted). Plaintiff's Complaint contains no facts to establish "above a speculative level," *Twombly*, 550 U.S. at 555, that Defendants' refusal to provide him with a single cell or auxiliary aids and services is a result of discriminatory intent. "A plaintiff must do more than make conclusory allegations to establish an equal protection claim." *Harrell v. Ross*, No. 23-8007, 2024 WL 389407, at *4 (10th Cir. Feb. 2, 2024). Based on his failure to sufficiently allege that Defendants acted with discriminatory intent, Plaintiff's claim based on disability discrimination is without merit.

      **b.**    **Race**

Plaintiff also asserts conclusory statements in his Complaint that Defendants' challenged actions were the result of discriminatory intent based on race or racial profiling. *Compl.* [#1] at 12, 30. As established, an equal protection claim requires Plaintiff to show that Defendants treated him differently from similarly situated prisoners. *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018) "Individuals are similarly situated only if

they are alike in all relevant respects." *Id.* (quoting *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018)).

Plaintiff states that Defendants' "denial of the necessary accommodations is due to discriminatory" animus "based on retaliation / or my race." [#1] at 12. Nowhere in his Complaint does Plaintiff identify his race. Although in his Response, Plaintiff identifies himself as a "black male prisoner," [#30] at 15, the Court does not generally consider new factual statements or arguments presented in a response to a motion to dismiss. *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their [c]omplaint by alleging new facts in their response to a motion to dismiss."). Even considering this information, however, Plaintiff's claim still fails because he has not identified any non-black disabled inmates who have been provided with the accommodations he is refused. Without such allegations, Plaintiff fails to plausibly allege a claim for violation of the Equal Protection Clause based on race. Accordingly, the Court **recommends** that the Motion to Dismiss [#26] be **granted** and that Plaintiff's Fourteenth Amendment equal protection claims be **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (holding that district court erred in dismissing with prejudice pro se plaintiff's complaint because dismissal with leave to amend is appropriate where the pleading defects can be corrected).

### 3.     Eighth Amendment Deliberate Indifference Claim

Finally, Plaintiff asserts an Eighth Amendment claim alleging that Defendants' actions in refusing his requested accommodations constitute cruel and unusual conditions of confinement. *Compl.* [#1] at 11, 18, 19, 29, 30, 31-32, 34. "The Eighth Amendment

requires jail officials to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (internal quotation marks omitted). "To hold a jailer personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of an objective and subjective component." *Id.* First, the deprivation at issue must be sufficiently serious, which is analyzed based on the severity and duration of the deprivation. *Id.* Second, the jail official must have a "sufficiently culpable state of mind," which is analyzed under a standard of "deliberate indifference to inmate health and safety." *Id.*

Here, Plaintiff states that Defendants have denied him various auxiliary aids and services and that he was deprived of electricity for eight days, during which he was unable to utilize the assistive technology he owns, including a talking book and clock and "other devices." [#1] at 22-24, 27. None of these alleged deprivations implicate basic necessities such as food, clothing, shelter, medical care, or reasonable safety measures. *See Craig*, 164 F.3d at 495. In short, the Court finds that Plaintiff has not adequately alleged the objective component of a conditions-of-confinement claim.[9] Based on this, the Court **recommends** that the Motion to Dismiss [#26] be **granted** and that Plaintiff's Eighth Amendment claims be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.[10]

---

[9] Because Plaintiff has not alleged facts sufficient to support the objective component of his § 1983 claim, the Court need not address the subjective component.

[10] In his Reply, Plaintiff asserts for the first time that Defendants denied him a wheelchair accessible cell. [#30] at 10-11. In his Complaint, Plaintiff referenced being denied a single cell, he

16

## IV. Conclusion

IT IS HEREBY **RECOMMENDED** that Defendant's Partial Motion to Dismiss [#26] be **GRANTED in part** and **DENIED in part**.

Specifically, the Court **recommends** that Defendants' Motion [#26] should be **denied** to the extent the individual Defendants requested qualified immunity.

Further, the Court **recommends** that the Motion [#26] should be **granted** as to following claims, and that those claims be **dismissed without prejudice**:

- Official capacity claims and claims against the CDOC for money damages and retrospective injunctive relief;

- 42 U.S.C. § 1983 claims that rely on enforcement of the NFB Settlement Agreement against all Defendants; and

- Eighth and Fourteenth Amendment claims against all Defendants.

If this Recommendation is adopted, the following claims would remain:

- Claims under Title II of the ADA against all Defendants;

- Claims under § 504 of the Rehabilitation Act; and

- First Amendment retaliation claim against Defendant Thomas in his individual capacity.

IT IS **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Federal Rule of Civil Procedure 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after

---

did not indicate that his disabilities required and/or that Defendants had denied him a wheelchair accessible cell. As previously explained, the Court will not consider new factual statements or arguments presented in a response. *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d at 1203.

being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 22, 2025                                          BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge