IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-02016-CNS-KAS

LOUIS PEOPLES, JR.,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
MOSES STANCIL,
JEFF LONG,
JANET SMITH,
SEAN MITCHELL,
ANTHONY RUSSELL, and
CAROL THOMAS,

     Defendants.

---

**ORDER**

---

Before the Court is Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 114-1. The motion is fully briefed. *See, e.g.,* ECF No. 108; ECF No. 121. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion. In doing so, the Court presumes familiarity with this case's procedural background and the allegations set forth in Plaintiff's Second Amended Complaint, as well as the legal standards governing the Court's analyses. *See generally*

1

ECF No. 81; *Est. of Ward by & through Stamp v. Lucero*, 178 F.4th 604, 611 n.5 (10th Cir. 2026); Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).

## I.    DISCUSSION

Defendants urge dismissal on several bases. *See generally* ECF No. 114-1. The Court addresses them in turn, explaining which are and are not persuasive.

### A. Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment bars Plaintiff's CADA claims— Plaintiff's sixth and ninth claims for relief—because "Colorado has not waived Eleventh Immunity for these claims." ECF No. 114-1 at 6. *See also id.* at 8 (acknowledging that although CADA permits a plaintiff to "bring a civil suit in a court of competent jurisdiction," but arguing "this [CADA] provision does not expressly waive Eleventh Amendment immunity to a suit *in federal court*" (citation modified)). Plaintiff challenges Defendants, arguing that his CADA claims are not barred by the Eleventh Amendment because Defendants consented to federal court jurisdiction in the Amended Release and Settlement Agreement with the National Federation of the Blind of Colorado (the Settlement Agreement), *see* ECF No. 108 at 6, as well as that the Court may exercise supplemental jurisdiction over his CADA claims, *see id.* at 8, given Plaintiff likewise asserts claims under the ADA and Rehabilitation Act. The Court agrees with Defendants that Plaintiff's CADA claims are barred by the Eleventh Amendment.

*First*, as to Plaintiff's argument that the Settlement Agreement amounts to a *sovereign immunity* waiver, the Court agrees with Defendants that it does not. *See* ECF No. 121 at 5. Review of the Settlement Agreement confirms Defendants' interpretation

that nothing in the Settlement Agreement "incorporates or even references CADA." *Id.* (citation modified). Indeed, the Settlement Agreement concerned itself only with the federal claims at issue in the underlying lawsuit: violations of "Title II of the [ADA] and Section 504 of the Rehabilitation Act." ECF No. 114-1 at 24. *See also id.* at 38 (explaining that "[i]n resolving [a] dispute" pertaining to Settlement Agreement, "the Court will apply the standards of Title II and Section 504"). This case is unlike *In re Innes*, marshalled by Plaintiff, where upon consideration of the "underlying facts and circumstances of the case," 184 F.3d 1275, 1280 (10th Cir. 1999), the Tenth Circuit concluded Kansas State University, a state agency, waived its sovereign immunity because it "explicitly consent[ed] to participate in a federal program and to follow the conditions thereof, including participation in certain federal bankruptcy court functions, [which was] closely analogous to the waiver found in a state's acceptance of conditioned federal funds and differ[ed] greatly from mere participation in otherwise commercial lawful activity," *id.* at 1281 (citation modified). In other words, *In re Innes* did not involve *only* a settlement agreement concerning distinct, federal—not state law—legal claims. Contrary to Plaintiff's suggestion, its factual distinctions are material. *Cf.* ECF No. 108 at 6; ECF No. 121 at 4.

Relatedly, to the extent that a contract provision at issue in *In re Innes* did concern or impose a legal obligation, it imposed precisely the obligation at issue in that dispute— unlike here, where the Settlement Agreement makes no mention of CADA. *Compare* ECF No. 114-1 at 24, *with* 184 F.3d at 1282 ("Because the contract *explicitly states* that KSU agrees to perform the obligations imposed by 34 C.F.R. § 674, we agree with the district court that by including this *particular regulation* in the contract KSU necessarily consented

3

to perform certain functions in the federal bankruptcy court pursuant to § 674.49." (citation

modified)). And simply because the Settlement Agreement imposed "commitments to all

blind inmates," ECF No. 108 at 7, this is insufficient, even under *In re Innes,* to amount to

Defendants' *sovereign immunity* waiver. *Cf.* 184 F.3d at 1282; *Levy v. Kansas Dep't of

Soc. & Rehab. Servs.*, 789 F.3d 1164, 1170 (10th Cir. 2015) ("In deciding whether a State

has waived its constitutional protection under the Eleventh Amendment, we will find

waiver only where stated by the *most express language* or by such overwhelming

implications from the text as (will) leave no room for any other reasonable construction."

(citation modified)); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd*.,

527 U.S. 666, 682 (1999).

Second, Defendants are correct that some courts in this judicial district have

concluded plaintiffs' CADA claims are barred by sovereign immunity. *See, e.g., Moudden

v. Univ. of Colorado Boulder*, No. 18–cv–2514–WJM–SKC, 2019 WL 6975015, at *8 (D.

Colo. Dec. 20, 2019); *Slover v. Univ. of Colorado*, No. 1:21–cv–01378–SKC, 2022 WL

833364, at *3 (D. Colo. Mar. 20, 2022) ("With respect to her claims under CADA . . .

Colorado has not waived its Eleventh Amendment immunity for CADA claims to be heard

in federal court." (citation modified)). Plaintiff cites competing authority. *See* ECF No. 108

at 8; *Cooper v. Colorado Dep't of Corr*., No. 21–cv–02411–PAB–NYW, 2022 WL

2063229, at *7 (D. Colo. June 8, 2022) (granting motion to amend because decisions did

not "definitely demonstrate that the Eleventh Amendment bars claims arising under CADA

in federal court"). Although cases from this judicial district are in tension with one another

as to whether the Eleventh Amendment bars assertion of CADA claims in federal court,

other authorities resolve that tension.[1] *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."); *id.* at 117 ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when the relief sought and ordered has an impact directly on the State itself." (citation modified)); *ARC of California v. Douglas*, No. 2:11–cv–02545–MCE–CKD, 2018 WL 1535511, at *6 (E.D. Cal. Mar. 29, 2018) ("A federal court may not enjoin a state official from violating purely state law; this is proscribed by the Eleventh Amendment to the United States Constitution." (citation modified)). Accordingly, the Court agrees with Defendants that the Eleventh Amendment bars Plaintiff's CADA claims. *See* ECF No. 114-1 at 6.[2]

*Third*, Plaintiff argues that the Court may exercise supplemental jurisdiction over his CADA claims, given that Defendants have consented to federal court jurisdiction for two federal claims under the Settlement Agreement. *See* ECF No. 108 at 8. To be sure,

---

[1] Plaintiff does not dispute that the Defendants against whom he asserts his CADA claims—CDOC, and several Defendants in their official capacities, *see, e.g.,* ECF No. 81 at 27—are state agencies for Eleventh Amendment purposes. *See also id.* at 2 (alleging CDOC is a "Colorado State Department"); *Brooks v. Colorado Dep't of Corr.*, No. 1:18–cv–02578–PAB–SKC, 2019 WL 4120753, at *3 (D. Colo. Aug. 6, 2019), *report and recommendation adopted*, No. 18–cv–02578–PAB–SKC, 2019 WL 4085371 (D. Colo. Aug. 29, 2019) ("The immunity conferred by the Eleventh Amendment extends to a state and its instrumentalities, including state agencies such as CDOC." (citation modified)); *Stevenson v. Williams*, No. 22–cv–00736–GPG–STV, 2023 WL 11955947, at *3 (D. Colo. Apr. 18, 2023), *report and recommendation adopted*, No. 1:22–cv–00736–GPG–STV, 2023 WL 11955949 (D. Colo. July 25, 2023) ("The State of Colorado, its entities, and state officials sued in their official capacities are protected by Eleventh Amendment immunity." (citation modified)).

[2] The Court likewise agrees with Defendants that there is no language in CADA that provides the requisite language that amounts to a *sovereign immunity* waiver. *See* ECF No. 114-1 at 8. *And compare* C.R.S. § 24–34–802(2)(a) (permitting CADA claims "in a court of competent jurisdiction"), *with Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) ("[I]n order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." (original emphasis)).

and as noted above, the Settlement Agreement contemplates obligations under the ADA and Rehabilitation Act. *See, e.g.,* ECF No. 114-1 at 24. And as Plaintiff observes, he also brings claims under the ADA and Rehabilitation Act in this case. *See* ECF No. 108 at 8. However, Supreme Court precedent forecloses this argument: "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 542 (2002) (citation modified). *See also Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004) ("[A]ll of [plaintiff's] state law claims are barred by the Eleventh Amendment, which precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal court." (citation modified)); *Pennhurst*, 465 U.S. at 121 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." (citation modified)). Based on this binding authority, *see Wallace v. Jaffree*, 472 U.S. 38, 47 n.26 (1985), the Court rejects Plaintiff's argument that it is proper "in the interest of judicial economy," ECF No. 108 at 8, to exercise jurisdiction over his CADA claims alongside the ADA and Rehabilitation Act claims. *See also* ECF No. 121 at 5.

* * *

For the reasons set forth above, the Court agrees with Defendants that Plaintiff's CADA claims are barred by the Eleventh Amendment. *See, e.g.,* ECF No. 121 at 3. As such, Plaintiff's sixth and ninth claims for relief are dismissed without prejudice. *See, e.g., Slover*, 2022 WL 833364, at *4 (observing that where claims are "barred by the Eleventh Amendment, they must be dismissed without prejudice" (citation modified)).

6

### B. First Amendment & Qualified Immunity

Defendants argue that Defendants Sherwood and Thomas are entitled to qualified immunity as to Plaintiff's First Amendment retaliation claims "because their alleged actions do not rise to a constitutional violation." ECF No. 114-1 at 9. Plaintiff argues that Defendants Sherwood and Thomas are not entitled to qualified immunity because the operative complaint "establishes all the elements of a First Amendment retaliation claim," ECF No. 108 at 10, against Defendants Sherwood and Thomas, and because his First Amendment rights were clearly established, *id.* at 13. The Court agrees with Plaintiff that Defendants Sherwood and Thomas are not entitled to qualified immunity as to his First Amendment retaliation claim. Because Defendants assert qualified immunity as to Plaintiff's First Amendment claim, the Court proceeds to analyze whether Plaintiff has met his *constitutional violation* and *clearly established law* burdens, explaining why he has. *See, e.g., Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (explaining dismissal motion based on qualified immunity "impose[s] burden on the plaintiff to show both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation" (citation modified)).[3]

*First*, as to whether Plaintiff has alleged a *constitutional violation* for First Amendment retaliation, he has. In order to so, Plaintiff must allege: "(1) [he] was engaged in constitutionally protected activity; (2) that [Defendants Sherwood and Thomas's]

---

[3] Of course, in asking whether Plaintiff has met this burden at the dismissal stage, the Court "analyz[es] [Defendants'] conduct as *alleged in the complaint*." *Wilson v. Stoltenberg*, No. 25-3139, --- F.4th ----, 2026 WL 2066343, at *3 (10th Cir. July 17, 2026) (citation modified) (original emphasis). *See also id.* (recognizing that "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment").

actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that [these] adverse action[s] w[ere] substantially motivated as a response to [his] exercise of constitutionally protected conduct." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citation modified). As a preliminary matter, Defendants do not meaningfully dispute that Plaintiff has alleged that he engaged in protected activity, instead focusing their argument on whether he has adequately alleged Defendants Sherwood and Thomas were connected to such activity. *See, e.g.,* ECF No. 114-1 at 11 ("Although Peoples alleged he *engaged in protected activity* with the written correspondence and personal discussions regarding alleged accommodation requests, there are no factual allegations that Sherwood was informed about said written correspondence or personal discussions or their contents." (citation modified)); ECF No. 81 at 16 (alleging that Plaintiff "filed grievances, made verbal complaints, and wrote letters related to the denial of his vision and housing accommodations"). Therefore, considering Defendants' fundamental concession and the well-pleaded allegations establishing that Plaintiff engaged in protected activity, *see, e.g., id.*, the Court proceeds to analyze the second and third elements of his First Amendment retaliation claim. *See also Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) ("The filing of prison grievances is constitutionally protected activity." (citation modified)); *Allen v. Avance*, 491 F. App'x 1, 6 (10th Cir. 2012) ("[The plaintiff] filed a prison grievance, which our cases have held are constitutionally protected activity." (citation modified)).

Regarding the second "adverse action" element—that is, whether Defendants Sherwood and Thomas's actions "caused [Plaintiff] to suffer an injury that would chill a

8

person of ordinary firmness from continuing to engage in that activity"—this inquiry is objective. *Shero*, 510 F.3d at 1203 (citation modified); *Handy v. Douglas*, No. 14–cv–01930–WYD–MEH, 2016 WL 11383923, at *8 (D. Colo. Jan. 5, 2016), *report and recommendation adopted*, No. 14–cv–01930–WYD–MEH, 2016 WL 1274029 (D. Colo. Mar. 31, 2016) (characterizing this element as "adverse action" element). Here, Plaintiff alleges ample facts showing that Defendants Sherwood and Thomas's actions caused an injury that would chill an ordinary person from continuing to engage in protected activity. *See Shero*, 510 F.3d at 1203. Plaintiff alleges the following:

- On August 28, 2023, Peoples spoke with Captain Thomas about the electricity. She stated out loud that she was not going to turn on the power and told Peoples that 'if he did not find a celly, then he can go to the hole and he would have a single cell in segregation.' She then walked to her office, laughing, with Officer Sherwood, who witnessed the entire incident;

- These events discouraged Peoples from filing subsequent grievances. Prior to Thomas' threats on August 28, 2023, Peoples had filed five grievances in the preceding six months. Peoples only filed a single grievance after these events in 2023, which related to his pre-existing housing accommodation that Thomas took away in retaliation;

- In April 2025, Peoples again requested his own cell as he is in a wheelchair and needs a wheelchair accessible cell;

- While sitting in his case manager's office, Thomas again threatened Peoples, stating that he needed to stop complaining or he would be placed in segregation;

- Peoples submitted several grievances concerning Defendants Sherwood's and Thomas's retaliatory actions;

- Defendants' physical and verbal intimidation, including threats to 'put [Peoples] in the hole' and remove his cell accommodations if he continued to file grievances, suffice to chill a person of ordinary firmness from continuing to seek redress for improper care and accommodations;

9

- Peoples suffered actual injury in that Defendants' actions did, in fact, deter him from filing further grievances as demonstrated by the substantial decrease in grievances filed after he was threatened;

- Defendant Thomas' statements to Peoples following his submission of grievances, including ordering him to "get a cellmate or be sent to the hole," demonstrate an impermissible retaliatory motive; and

- Defendants were aware of Peoples's grievances, which complained of their actions, and their threats and adverse actions were in close temporal proximity to Peoples's filing of those grievances.

ECF No. 81 at 12–13, 15–16. *See also* ECF No. 108 at 11 (arguing that "[Plaintiff] was removed from his previously confirmed housing accommodations and placed with a cellmate shortly after his August 2023 encounter with Thomas and Sherwood" and collecting citations to operative complaint).

These allegations amount to more than a mere "implementation of a time limitation" on Plaintiff's speech, and thus go beyond "de minimus injuries" that might otherwise fail to satisfy this element of Plaintiff's claim. *Shero*, 510 F.3d at 1204. Nor is this a circumstance where Plaintiff has put forth a single allegation, without any factual enhancement, as to a single incident giving rise to his retaliation claim. *Cf. Shields v. Cline*, 829 F. App'x 321, 325 (10th Cir. 2020) (affirming dismissal of claim where plaintiff "state[d] that he was moved from his current cell to a 'more restrictive' cellhouse but d[id] not provide any further detail about the additional restrictions [because this] allegation, *without more*, [was] not enough to allege sufficient harm to state a First Amendment retaliation claim" (emphasis added)). Indeed, the Court agrees with Plaintiff that, as outlined above, he has alleged that he suffered concrete, material injuries such as the loss of electricity, and endured the severe threat of being placed in segregation, as well

as threats to have his cell accommodations removed. *See, e.g.,* ECF No. 108 at 10; ECF No. 81 at 15–16.

Fundamentally, these well-pleaded actions—especially when taken together—are sufficient for Plaintiff to meet his second element, *adverse action* burden. *See, e.g., Parker v. Ritter*, No. 08–cv–00737–MSK–KLM, 2010 WL 1286081, at *9 (D. Colo. Mar. 25, 2010) (concluding that "allegations of threats of continued and prolonged confinement to administrative segregation [were] sufficient to satisfy [plaintiff's] burden to demonstrate that [defendants'] actions were sufficient to chill a person of reasonable firmness" and collecting cases); *Handy*, 2016 WL 11383923, at *9 (noting a "'threat' of longterm segregation was sufficient to chill a person from engaging in protected activity" (citation modified)); *Wilson*, 2026 WL 2066343, at *3 (accepting as true "*all* well-pleaded allegations in the complaint and view[ing] them in the light most favorable to the plaintiff" (citation modified)). For these reasons, Defendants' argument that Plaintiff has failed to allege an adverse action fail to persuade. *See* ECF No. 114-1 at 12.

Regarding the third, "causation" element, *Shero*, 510 F.3d at 1203, Plaintiff has likewise alleged facts that satisfy this element. *See also Handy*, 2026 WL 2066343, at *9 (characterizing this third element as "causation" element). As for Defendant Sherwood, Plaintiff correctly observes that allegations in the operative complaint demonstrate more than Defendant Sherwood's "inaction." ECF No. 108 at 11. Instead, Defendant Sherwood was involved in the incident between Defendant Thomas and Plaintiff regarding "the electricity." ECF No. 81 at ¶ 80. Elsewhere, Plaintiff alleges that Defendants Thomas and Sherwood engaged in physical and verbal intimidation against Plaintiff. *See id.* at ¶ 115.

And Plaintiff does allege that he personally communicated with Defendant Sherwood, among other Defendants, regarding his complaints, *see id.* ¶ 138, as well as that Defendant Sherwood, along with Defendant Thomas, engaged in "physical and verbal intimidation, including threats . . . [to] remove [Plaintiff's] cell accommodations if [Plaintiff] continued to file grievances," *id.* at ¶ 115. These allegations provide adequate notice of "how [Defendant Sherwood] participated in the alleged constitutional violation," *Wilson*, 2026 WL 2066343, at *9 (citation modified), especially considered at this procedural stage, *see id. See also Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) ("[T]here is an *arguable* basis for this claim; if in fact DOC officials retaliated against [the plaintiff] based on his filing administrative grievances, they may be liable for a violation of his constitutional rights." (emphasis added)). And these allegations certainly satisfy the underlying doctrinal standard, given that Plaintiff has alleged facts plausibly indicating that Defendant Sherwood "would not have" made threats to remove Plaintiff's cell accommodations "if [Plaintiff] had not attempted to file and filed the grievances." *Allen*, 491 F. App'x at 5.

Simply stated, the well-pleaded allegations in Plaintiff's operative complaint show that he filed his grievances, and Defendant Sherwood, along with Defendant Thomas, retaliated against him for doing so. *See, e.g.,* ECF No. 81 at ¶ 115 ("Defendants' physical and verbal intimidation, including threats to 'put [Peoples] in the hole' and remove his cell accommodations *if he continued to file grievances*, suffice to chill a person of ordinary firmness from continuing to seek redress for improper care and accommodations."

(emphasis added)).[4] Accordingly—adhering, as the Court must, to the well-settled legal standard that governs its analysis at the dismissal stage—the Court agrees with Plaintiff that this is sufficient for Plaintiff to meet his *causation* burden. *See* ECF No. 108 at 12; *Allen*, 491 F. App'x at 5; *Fogle*, 435 F.3d at 1264; *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990) (observing that a plaintiff must allege "but for" the retaliatory motive "the incidents to which he refers . . . would not have taken place" (citation modified)). *Cf. Handy*, 2016 WL 11383923, at *9 ("[T]here is *no evidence* that these Defendants' conduct related to Plaintiff's placement in segregation was motivated by Plaintiff's grievances." (citation modified)). The Court's conclusion is bolstered by—but not reliant upon—as Plaintiff observes, the temporal proximity between his grievances and Defendant Sherwood's alleged misconduct. *See* ECF No. 108 at 13; *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010).

---

[4] This allegation, and all those discussed above, refute Defendants' characterization of Plaintiff's arguments regarding Defendant Sherwood's conduct as too "conclusory" to survive their dismissal motion. ECF No. 114-1 at 12. To the contrary: the operative complaint adequately alleges a connection between Plaintiff's grievances and Defendant Sherwood's alleged actions, demonstrating that Defendants are wrong to argue that the operative complaint contains "*no* factual allegations," ECF No. 114-1 at 11 (emphasis added), that Defendant Sherwood had the requisite awareness of Plaintiff's conduct for Plaintiff to plausibly allege a violation of his constitutional rights, *see, e.g.,* ECF No. 81 at ¶ 115. Indeed, the operative complaint provides sufficient factual enhancement for its allegations regarding Defendant Sherwood, particularly where the Court may—and must—draw the inference in Plaintiff's favor that Defendant Sherwood was involved in the August 28, 2023, incident regarding "the electricity." *See* ECF No. 81 at ¶ 80 (alleging that Defendant Thomas "walked to her office, laughing, *with* Officer Sherwood" (emphasis added)); *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) ("[A]ll well-pleaded allegations in the complaint must be accepted as true and viewed *in the light most favorable* to the plaintiff." (citation modified)). Fundamentally, *even if* the operative complaint "could have been better developed, [Plaintiff's] allegations, properly understood under the controlling standards, satisfy what is required *at this stage*." *Wilson*, 2026 WL 2066343, at *10 (emphasis added). Come what may at summary judgment, should Defendants choose to file such a motion, about which the Court expresses no opinion now. *Cf. Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1219 (10th Cir. 2022) ("At the motion to dismiss stage, we are tasked with assessing plausibility, *not proof*." (citation modified)); *Truman*, 1 F.4th at 1235 (observing that where defendants assert qualified immunity at the motion to dismiss stage that courts analyze "the defendant's conduct *as alleged in the complaint*" (citation modified)).

For substantially the same reasons, the Court agrees with Plaintiff that he has met his *causation* burden as to Defendant Thomas. *See* ECF No. 108 at 12–13. The allegations discussed above certainly provide Defendant Thomas with adequate notice of how Defendant Thomas participated in the underlying constitutional violation, *see Wilson*, 2026 WL 2066343, at *9, and provide factual enhancement by alleging that Defendant Thomas "stated out loud that she was not going to turn on the power and told Peoples that 'if he did not find a celly, then he can go to the hole and he would have a single cell in segregation.'" ECF No. 81 at ¶ 80. In sum, the allegations—again, analyzed under the familiar and binding legal framework that controls the Court's analysis of Defendants' dismissal motion—against Defendant Thomas show that but for Plaintiff's grievances, Defendant Thomas would not have taken the adverse actions, as discussed above, against Plaintiff. *See, e.g., Allen*, 491 F. App'x at 5; *Fogle*, 435 F.3d at 1264; *Smith v. Maschner*, 899 F.2d at 949–50.[5]

*Second*, because Plaintiff has satisfied each element of his First Amendment retaliation claims against Defendants Sherwood and Thomas, thus sufficiently alleging a constitutional violation, *see Shero*, 510 F.3d at 1204, the Court turns to whether Plaintiff's right was clearly established at the time of the alleged constitutional violations, *see, e.g., Doe*, 912 F.3d at 1289. It was. "The filing of prison grievances is constitutionally protected

---

[5] Defendants' final argument regarding Plaintiff's *constitutional violation* is that Plaintiff has inadequately alleged Defendant Sherwood's "personal participation" in the violation of Plaintiff's constitutional rights. *See* ECF No. 114-1 at 12. Explained above, Plaintiff has alleged much more than that Defendant Sherwood "failed to act," *id.*, and the operative complaint contains numerous allegations that show Defendants are wrong to argue that Plaintiff has alleged that Defendant Thomas's conduct was "based solely on empty threats," *id.* at 13. Thus, analyzing their personal participation either here, as part of the Court's *constitutional violation* inquiry, or even as a threshold matter, it's clear that Plaintiff has adequately alleged Defendant Sherwood and Thomas's personal participation. *See Wilson*, 2026 WL 2066343, at 10 n.15.

activity." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (citing *Gee*, 627 F.3d at 1189); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996) ("Defendants do not have qualified immunity in this case, however, because it is well established that prison officials must provide inmates access to the courts, and prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts." (citation modified)); *Allen*, 491 F. App'x at 6 ("[The plaintiff] filed a prison grievance, which our cases have held are constitutionally protected activity." (citing *Gee*, 627 F.3d at 1189; *and Penrod*, 94 F.3d at 1404–05)).

Therefore, Plaintiff has met his *clearly established* burden. *See also Wilson*, 2026 WL 2066343, at *5 ("A Tenth Circuit decision on point . . . can clearly establish a right. Precedent is considered on point if it involves materially similar conduct or applies with *obvious clarity* to the conduct at issue." (citation modified)). Simply stated, it was clearly established at the time of the events set forth in the operative complaint that filing grievances, such as those filed by Plaintiff, was constitutionally protected, as well as that Plaintiff had a constitutional right to be free from retaliation or harassment when filing them. *See, e.g., Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." (citation modified)); *Gee*, 627 F.3d at 1189 (explaining the same and describing allegations where plaintiff "fil[ed] specific grievances" as "constitutionally protected activity" (citation modified)); *Allen*, 491 F. App'x at 6. For these reasons Defendants are wrong to argue otherwise, especially where the operative complaint

15

plausibly alleges that both Defendant Sherwood and Defendant Thomas engaged in retaliatory conduct. *Cf.* ECF No. 114-1 at 14; ECF No. 121 at 9.

* * *

For the reasons set forth above, Plaintiff has met his *constitutional violation* and *clearly established* burdens. *See, e.g., Doe*, 912 F.3d at 1289. Accordingly, his First Amendment retaliation claim survives Defendants' assertion of qualified immunity. *Cf. Wilson*, 2026 WL 2066343, at *3.

### C. Equal Protection & Qualified Immunity

Defendants challenge the plausibility of Plaintiff's equal protection claim and assert that they are entitled to qualified immunity. *See* ECF No. 114-1 at 14 ("Peoples fails to allege his equal protection rights were violated, *and* Defendants are entitled to qualified immunity." (emphasis added)). As a preliminary matter, the Court observes that these challenges distinct issues. The first, as to whether Plaintiff has plausibly alleged an Equal Protection claim that survives Rule 12(b)(6) scrutiny; the second, as to whether he has met his two-part burden to survive Defendants' assertion of qualified immunity. *See, e.g., Berryman v. Niceta*, 143 F.4th 1134, 1141 (10th Cir. 2025); *Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1220 (10th Cir. 2025) ("[A] claim of immunity is conceptually distinct from the merits of the plaintiff's claim." (citation modified)). The Court, as it must, *see id.*, separates these inquiries, focusing first on Defendants' qualified immunity arguments. And in doing so, the Court exercises its discretion to consider the *clearly established law* prong first. *See, e.g., George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Commissioners*, 32 F.4th 1246, 1252 (10th Cir. 2022).

Considering the *clearly established* law prong and Defendants' arguments that attend it, the Court concludes that Defendants have "adequately presented" the issue as to whether Plaintiff's Equal Protection right was clearly established, *see Berryman*, 145 F.4th at 1140, and that Plaintiff has failed to meet his burden to show that his right was clearly established at the time of Defendants' alleged unlawful conduct, *see id. See also* ECF No. 114-1 at 17 (arguing that Plaintiff "cannot show that [certain] Defendants violated his clearly established equal protection rights under these circumstances" and collecting cases in support of this argument).

In response to Defendants' arguments, Plaintiff devotes much of his Equal Protection briefing to the *plausibility* of his claim. *See, e.g.,* ECF No. 108 at 14 ("Plaintiff has *plausibly alleged* that Defendants violated his constitutional rights to equal protection." (citation modified); *id.* at 15 ("Plaintiff therefore *plausibly alleges* that he is a member of [a] sub-class of inmates . . . ." (citation modified)). Yet Plaintiff devotes only a paragraph of his response brief in arguing that Defendants "are not entitled to qualified immunity." *Id.* at 16. And within this paragraph, Plaintiff offers only the following sentence regarding his *clearly established* rights: "Here, Defendants' retaliatory actions towards Plaintiff for requesting ADA accommodations are a clear violation of Plaintiff's rights under the ADA, Rehabilitation Act, CADA, and the First Amendment." *Id.* (citation modified). One sentence within one paragraph is insufficient to adequately brief an issue—here, whether Plaintiff has met his *clearly established* burden. *See, e.g., Elide Fire USA, Corp. v. Auto Fire Guard, LLC*, No. 21–cv–0943–WJM–KLM, 2022 WL 18777076, at \*3 (D. Colo. Nov. 17, 2022) (observing that "a single sentence is insufficient to adequately brief

an issue" (citation modified)). Such cursory briefing is certainly insufficient for Plaintiff to meet his *clearly established* burden. *See, e.g., T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (reciting a plaintiff's "two-part [qualified immunity] burden and observing "[t]his is a heavy burden, [and if] the plaintiff fails to satisfy either part of the inquiry, [a] court must grant qualified immunity" (citation modified)); ECF No. 121 at 11.

The Court's conclusion regarding the insufficiency of Plaintiff's brief is bolstered because the sentence of argument that Plaintiff does offer does not mention the Equal Protection Clause *at all*. Instead, Plaintiff argues that his Equal Protection rights were clearly established based on other authorities: the ADA, Rehabilitation Act, CADA, and the First Amendment. *See* ECF No. 108 at 16. While it is possible the alleged violations of such authorities may sustain a § 1983 claim, *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009), they do not sustain such a claim for an *Equal Protection* violation. *See also Havens v. Clements*, No. 13–cv–00452–MSK–MEH, 2014 WL 1213804, at *7 (D. Colo. Mar. 24, 2014) ("In order to overcome the defense of qualified immunity, the right *alleged to have been violated* must have been clearly established in the law at the time of the alleged violation." (citation modified)); *T.D.*, 868 F.3d at 1220.

### D.  ADA, Rehabilitation Act, and Causation

Defendants contend that the "majority" of Plaintiff's ADA and Rehabilitation Act claims should be dismissed for "lack of causation." ECF No. 114-1 at 17. Plaintiff counters

that he has adequately alleged a "causal connection" under both statutes. ECF No. 108

at 17. The Court agrees with Plaintiff as to all Defendants, except for Defendant Stancil.[6]

To set forth plausible ADA and Rehabilitation Act retaliation claims, Plaintiff must

allege: that he (1) engaged in protected activity, (2) was subject to an adverse action, and

(3) that "a causal connection existed between" the protected activity and the adverse

action. *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1265 (10th Cir. 2009) (citation

modified). *See also Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126,

1131 (10th Cir. 2010) (explaining that the "standard for retaliation claims under the

Rehabilitation Act is the same as the standard for retaliation claims" under the ADA). As

indicated above, Defendants challenge only the *causation* element of Plaintiff's retaliation

claims. *See* ECF No. 114-1 at 19 ("Even assuming that [Plaintiff] did sufficiently allege

that he engaged in protected activity, he fails to allege [any] retaliation claim because he

does not allege sufficient facts *to support causation* . . . ." (citation modified)).[7]

The Tenth Circuit has provided clarification on how plaintiffs may allege the

requisite "causal connection," *Hennagir*, 587 F.3d at 1265, between protected activity and

any adverse action: "To establish a causal connection, a plaintiff must present evidence

of circumstances that justify an inference of retaliatory motive." *Lincoln v. BNSF Ry. Co.*,

900 F.3d 1166, 1209 (10th Cir. 2018) (citation modified). *See also id.* (observing this

---

[6] Given that Defendants limit their dismissal challenge to the *causation* element of Plaintiff's ADA and Rehabilitation Act claims, the Court likewise limits its analysis to this element. *See* ECF No. 114-1 at 17–20.

[7] Moreover, Defendants' brief does not meaningfully contest its actions were not materially adverse. *See also Jarvis v. Potter*, 500 F.3d 1113, 1126 (10th Cir. 2007) (proceeding to *causation* analysis where defendant "[had] not contended that its actions were not adverse" (citation modified)).

standard is "likened [to the] burden [of] showing 'but-for causation.'" (citation modified));

*Anderson v. Textron Aviation, Inc.*, No. 22–cv–01145–JAR–KGG, 2022 WL 15427625, at

*3 (D. Kan. Oct. 27, 2022) (same). Evidence of "but for" causation in this retaliation context

"must be based on more than mere speculation, conjecture, or surmise." *Lincoln*, 900

F.3d at 1209 (citation modified).

Plaintiff has adequately alleged a causal connection between his protected

conduct and Defendants' conduct. As a preliminary matter, the Court disagrees with

Defendants that "there are *no* allegations to connect the removal of the single cell

accommodation with the protected activity, [and thus that Plaintiff] fails to state a claim

under the ADA and Rehabilitation Act." ECF No. 11-41 at 19. The operative complaint

alleges that Plaintiff previously had a "sight-based ADA accommodation to his own double

occupancy cell without a cellmate," and then that this accommodation was revoked. *See*

ECF No. 81 at ¶ 60; *see also id.* at ¶ 61. Plaintiff alleges his housing accommodation was

taken away in retaliation due to the filing of his grievances. *See id.* at ¶ 81. Further, Plaintiff

alleges that after he requested accommodations for his impairments that his electricity

was turned off; he was threatened to go into the "hole"; he was assigned a cellmate; and

was again threatened with segregation when he requested an accessible cell. *See id.* at

¶ 210; *id.* at ¶¶ 82–83 (alleging that in April 2025, Plaintiff "again requested his own cell"

and that Defendant Thomas "then threatened [him], stating that he needed to stop

complaining or he would be placed in segregation"). These allegations, particularly when

read in the context of the entire complaint, *see, e.g., Wilson*, 2026 WL 2066343, at *9,

demonstrate that Plaintiff's retaliation claims are based on much more than "mere

20

speculation, conjecture, or surmise," *Lincoln*, 900 F.3d at 1209 (citation modified). Instead, there is sufficient temporal proximity between the alleged protected conduct and adverse actions, *see, e.g.*, *Austin v. Edmond Transit Mgmt. Inc.*, No. CIV–12–324–D, 2013 WL 49710, at *5 (W.D. Okla. Jan. 2, 2013), and sufficient allegations from which the Court—at this procedural stage—can justify "an inference of retaliatory motive," *Minner v. Off. Depot, Inc.*, No. 19–cv–02934–LTB–STV, 2020 WL 3118519, at *5 (D. Colo. June 11, 2020).

Next, Defendants contend that Plaintiff has failed to allege enough facts to sustain retaliation claims against Defendants CDOC, Long, and Mitchell. *See* ECF No. 114-1 at 19. Yet in opposition, Plaintiff cites allegations from the operative complaint that allege precisely the causation connection regarding these Defendants sufficient to survive their dismissal motion:

- Peoples has written letters, filed grievances, submitted requests for accommodations, and personally discussed his need for a single cell with Defendants Long, Mitchell, Smith, and Weliever;

- Peoples personally discussed Defendants' retaliatory conduct with Defendants Long, Mitchell, Sherwood, and Thomas, who failed to take any action as to the retaliatory conduct; and

- Peoples personally discussed Defendants' retaliatory conduct with Defendants Long, Mitchell, Sherwood, and Thomas, who failed to take any action as to the retaliatory conduct.

ECF No. 81 at 9, 32. Other allegations in the operative complaint underscore the plausibility of the causal connection underpinning Plaintiff's retaliation claims:

- Peoples's need for a wheelchair accessible cell was apparent to Defendants Long, Mitchell, Sherwood, and Thomas but Defendants did not consult with ADA coordinators Smith and Weliever;

21

- Peoples has filed numerous grievances and other complaints related to his requested accommodations. In particular, Defendants Weliever and Smith have denied Peoples's grievances;

- Peoples has written letters or personally discussed his need for accommodations with Long, Mitchell, Smith, Weliever, and Thomas;

- Peoples submitted several grievances concerning Defendants Sherwood's and Thomas's retaliatory actions; and

- Upon information and belief, Smith and Weliver were aware of Sherwood's and Thomas's retaliatory actions and failed to take any corrective action.

ECF No. 81 at 10, 13. The Court agrees with Plaintiff that, taking these alleged actions together, they sufficiently show how these individual defendants were "directly informed" of Plaintiff's protected activity, ECF No. 108 at 19, and yet retaliated against him by, for instance, refusing to provide "relief [or take] corrective action," *id.*[8] This is not a case where, for instance, a corporate employee asked "questions that she askes *every* employee applying for a position," *Lincoln*, 900 F.3d at 1210, nor is it one where Plaintiff fails to allege these Defendants knew about Plaintiff's protected conduct. *Cf. Hennagir*, 587 F.3d at 1267 (reciting fact from record that an employee "stated he honestly could not remember when he was told about [the plaintiff's] EEOC claim" (citation modified)).[9]

---

[8] For this reason, the Court also rejects Defendants' argument that Plaintiff fails to allege that Defendants Weliever or Smith engaged in "*any* adverse action as a result of [Plaintiff's] alleged protected activity." ECF No. 114-1 at 20 (emphasis added).

[9] The Court is likewise unpersuaded by Defendants' citation to *Vanech v. Walsh*, 21–cv–02804–CMA–NYW, 2022 WL 4010014 (D. Colo. July 8, 2022), *see* ECF No. 121 at 13, given that *Vanech*'s plaintiff "fail[ed] to allege that any [defendant] employee who was involved . . . knew that she had filed a formal Complaint of Discrimination," and that the plaintiff also "fail[ed] to identify who was involved in the processing of her formal Complaint of Discrimination, and she d[id] not include any allegations from which the court c[ould] determine that those individuals delayed in processing her complaint because [she] filed it." *Vanech*, 2022 WL 4010014, at *11. At bottom, Plaintiff has adequately alleged that Defendants engaged in *affirmative*, retaliatory conduct, premised on their personal knowledge. *See, e.g.,* ECF No. 108 at 18; ECF No. 81 at 10, 13; ECF No. 81 at ¶ 133. And the totality of Plaintiff's allegations, as explained above,

Instead, Plaintiff alleges that Defendants retaliated against him by turning off his electricity, receiving threats from Defendant Thomas, having his single cell accommodation removed, and being again threatened with segregation. *See, e.g.,* ECF No. 81 at 33.[10] Thus, Defendants are wrong to argue that Plaintiff fails to allege Defendants had the requisite knowledge, *cf.* ECF No. 114-1 at 19, or fails to adequately allege retaliatory conduct, particularly where the Court must draw inference in *favor of*, not *against*, Plaintiff, *see, e.g., Wilson*, 2026 WL 2066343, at *10. The same is true as to Defendant Sherwood, insofar as the operative complaint likewise adequately alleges his knowledge of Plaintiff's protected activity. *Compare* ECF No. 114-1 at 19, *with* ECF No. 81 at ¶¶ 80, 133, 138.[11]

However, as indicated above, the Court does agree with Defendants that Plaintiff has not adequately alleged a causal connection, and thus plausible retaliation claims, against Defendant Stancil. *See, e.g.,* ECF No. 114-1 at 20. The Court notes that the

---

provides the Court with sufficient factual information to "justify an inference of retaliatory motive." *Lincoln*, 900 F.3d at 1209 (citation modified).

[10] In this way, as indicated above, Plaintiff has done more than allege that Defendants simply *failed to accommodate* him, *cf.* ECF No. 121 at 13, alleging factual conduct instead that is sufficient, at this time, to sustain a *retaliation* claim. *Cf. Vanech*, 2022 WL 4010014, at *8. And such conduct goes beyond that of only Defendant Thomas. *Compare* ECF No. 121 at 12, *with, e.g.,* ECF No. 81 at ¶ 133 ("Defendants Long, Weliever, Smith, Mitchell, Sherwood, and Thomas continue to treat Peoples differently from other disabled prisoners by threatening him, *withholding his electricity*, making discriminatory statements, and unlawfully removing his housing accommodations." (citation modified)); *Wilson*, 2026 WL 2066343, at *10.

[11] As for Defendant Thomas, notably Defendants suggest that Plaintiff's disability retaliation claims against Defendant Thomas rise and fall with his First Amendment retaliation claim. *See* ECF No. 114-1 at 20 ("Additionally, *as with his First Amendment retaliation claims*, the ADA and Rehabilitation Act retaliation claims based on Thomas's alleged unfulfilled threats to send [Plaintiff] to segregation also fail . . . ." (citation modified)). Accepting Defendants' suggestion, the same allegations regarding Defendant Thomas's conduct in the First Amendment context likewise support—and make plausible—Plaintiff's claims against Defendant Thomas in the ADA and Rehabilitation Act retaliation context. *See also* ECF No. 108 at 19.

23

allegations to which Plaintiff directs the Court primarily concern other Defendants, namely Long, Mitchell, Smith, Weliever, and Thomas. *See, e.g.,* ECF No. 108 at 18. And as explained above, Plaintiff has pleaded a sufficient causal connection regarding these Defendants. But a review of the operative complaint, even reading its allegations in their entirety, and drawing all inferences in Plaintiff's favor, shows that allegations as to Defendant Stancil's conduct are comparatively spare. At most, the operative complaint sets forth well-pleaded allegations that Defendant Stancil is CDOC's Executive Director, ECF No. 81 at ¶ 8, had a duty to ensure that CDOC policies were followed, *id.* at ¶ 32, denied Plaintiff medical care related to his vision conditions "because of *associated costs*," *id.* at ¶ 43 (emphasis added), and that Defendant Stancil was one of many Defendants aware of Plaintiff's impairments, *see, e.g., id.* at ¶ 147. These allegations are insufficient to establish a causal connection for retaliation purposes under the ADA and Rehabilitation Act based on Plaintiff's alleged protected activity. *See* ECF No. 114-1 at 20; *Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010).[12]

Fundamentally, and contrary to Defendants' suggestion, *see* ECF No. 114-1 at 20, Plaintiff has adequately alleged a causal connection between Defendants Long, Mitchell,

---

[12] The Court underscores the deficiency of these allegations by contrasting them to allegations elsewhere in the operative complaint regarding other Defendants. For example, that Plaintiff had "written letters, filed grievances, submitted requests for accommodations, and personally discussed his need for a single cell with Defendants Long, Mitchell, Smith, and Weliever." ECF No. 81 at ¶ 62. Thus, although Plaintiff alleges that Defendant Stancil did not address his underlying medical needs, there are insufficient allegations for the Court to conclude that, unlike the Defendants named above, that Defendant Stancil "knew about the protected activity" such that Plaintiff has met his *causation* burden as to Defendant Stancil. *See Hackborn v. Hansen*, No. 1:19–cv–02679–DDD–NYW, 2022 WL 391809, at *3 (D. Colo. Feb. 9, 2022).

24

Weliever, Sherwood, and Thomas, such that Plaintiff's ADA and Rehabilitation Act claims survive Defendants' dismissal challenge as to these Defendants on *causation* grounds.[13] *See Wilson*, 2026 WL 2066343, at *10 (affirming denial of dismissal motion even where complaint "could have been better developed" because allegations "properly understood under the controlling standards, satisf[ied] what [was] required at this stage"); *Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790, 836 (10th Cir. 2025) (observing "the high burden that must be met by a defendant who moves to dismiss at the pleading stage") (Ebel, J., concurring). But, as discussed above, Plaintiff's retaliation claims against Defendant Stancil do not survive dismissal.

### E.  Duplication of Official Capacity Claims

Finally, the parties dispute whether Plaintiff's ADA and Rehabilitation Act claims brought against Defendants in their official capacities are duplicative. *Compare* ECF No. 114-1 at 20, *with* ECF No. 108 at 20. The Court agrees with Defendants in part: Plaintiff's claims brought against them in their official capacities are duplicative, but only as to Plaintiff's request for monetary relief under the ADA and Rehabilitation Act.

Courts have dismissed certain claims where a plaintiff sued a state entity and officers of that entity in such officer's official capacity, given that the claim against the officer would be "redundant, confusing, and unnecessary." *Sims v. Unified Gov't of*

---

[13] The Court notes the narrow nature of its analysis of this issue. Because Defendants moved only to dismiss Plaintiff's claims on *causation* grounds, so too did the Court confine its analysis to this issue. *See, e.g., Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters *the parties present*." (citation modified)). The Court expresses no opinion on issues that attend Plaintiff's retaliation claims beyond those the parties presented in their briefs. *See id.*

25

*Wyandotte Cnty./Kansas City, Kan.*, 120 F. Supp. 2d 938, 945 (D. Kan. 2000) (citation modified). But this reasoning does not apply, even in the ADA and Rehabilitation Act context, where a plaintiff seeks prospective, injunctive relief against a state agency official in their official capacity, even if a plaintiff also seeks relief against the state or agency itself. *See, e.g., Turner v. Nat'l Council of State Boards of Nursing, Inc*., No. 11–2059– KHV, 2012 WL 1435295, at \*15 (D. Kan. Apr. 24, 2012), *aff'd*, 561 F. App'x 661 (10th Cir. 2014) ("Plaintiff seeks injunctive relief on his ADA claims against the State Board members and employees in their official capacities . . . [T]o the extent that plaintiff seeks a prospective injunction, he may maintain an action against individual defendants in their official capacities." (citation modified)). *See also Thompson v. Davis*, No. 5:25–cv– 04069–HLT–RES, 2026 WL 1529348, at \*3 (D. Kan. June 1, 2026) (observing in § 1983 context that "suits against state officials in their official capacities seeking prospective declaratory and injunctive relief are not regarded as suits against the entity of which the official is an agent and are not treated as suits against the state" (citation modified)); *Zuni Pub. Sch. Dist. v. New Mexico*, No. CIV 99–89 MV/LFG, 1999 WL 35809578, at \*2 (D.N.M. May 14, 1999) (same).

These cases teach that, in determining whether any aspect of Plaintiff's ADA and Rehabilitation Act claims are duplicative in terms of the Defendants against whom Plaintiff asserts them, the Court must study the remedies that Plaintiff seeks in asserting those claims. Reading the operative complaint in its entirety, Plaintiff seeks both monetary damages under his ADA and Rehabilitation Act claims, as well as injunctive relief under the same. *See, e.g.,* ECF No. 81 at 36 (requesting relief under ADA and Rehabilitation

Act "in an amount to be proven at trial, including, but not limited to, compensatory, actual, and consequential damages"); *id.* at 37 (requesting relief in the form of an order "granting injunctive relief requiring Defendants to provide reasonable accommodations that are or may become necessary to [Plaintiff] to remedy [Defendants'] violations of the ADA [and] Rehabilitation Act").[14]

Given the nature of the remedies that Plaintiff seeks for his ADA and Rehabilitation Act claims—monetary and injunctive—the Court agrees with Defendants that Plaintiff's claims against Defendants in their official capacities are duplicative, but only to the extent that Plaintiff seeks monetary damages against them. To the extent that Plaintiff seeks monetary damages for alleged ADA and Rehabilitation Act violations, given that Plaintiff alleges the Defendants he sues in their official capacities are alleged to be CDOC employees, *see* ECF No. 81 at ¶ 6, Plaintiff's claims for *monetary* damages are dismissed against all official-capacity Defendants. Such claims, to the extent they seek monetary relief, are duplicative, and are best brought against CDOC itself. *See, e.g., Sims*, 120 F. Supp. 2d at 945. However, to the extent that Plaintiff seeks *prospective*, *injunctive* relief against the official-capacity Defendants under the ADA and Rehabilitation Act, his claims for *injunctive* against them in their official capacities may proceed and survive Defendants'

---

[14] The Court notes that Plaintiff seeks *prospective* relief. *See* ECF No. 81 at ¶¶ 158, 161 ("Defendants' discrimination against [Plaintiff] is ongoing."). *Cf. Turner*, 2012 WL 1435295, at *15 (dismissing claims where plaintiff "ha[d] not alleged any ongoing ADA violations," including any "on-going conduct by any State Board official or employee" that would violate the ADA (citation modified)).

dismissal challenge. *See, e.g., Turner*, 2012 WL 1435295, at *15; *Thompson*, 2026 WL 1529348, at *3; ECF No. 108 at 21.[15]

## II.   CONCLUSION

Consistent with the above analysis, Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 114-1, is GRANTED IN PART and DENIED IN PART.

DATED this 3rd day of August 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge

---

[15] Defendants' argument that Defendants Long, Mitchell, Sherwood, and Thomas lack the ability to implement any injunctive relief based on a lone allegation in the operative complaint that these Defendants did not previously consult with ADA coordinates fails to persuade. *See* ECF No. 121 at 15; ECF No. 81 at ¶ 65. This allegation about past conduct has nothing to do with the relief that these Defendants can afford in their official capacities, and regardless the allegation itself identifies no such limitation.